[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 21, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-10274
Non-Argument Calendar

_____

BIA Nos. A98-739-530 & A98-739-531

CAROLINA MARGARITA MARRERO-NAVA,
JULIO ERNESTO MEDINA-MORENO,
ANGEL NARCISO MARRERO-GARCIA,
LIGIA MARIA NAVA-DE MARRERO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 21, 2008)

Before BIRCH, DUBINA and KRAVITCH, Circuit Judges.

PER CURIAM:

Carolina Margarita Marrero-Nava ("Carolina"), on behalf of herself and her

husband Julio Ernesto Medina Moreno ("Julio"), and Angel Narciso Marrero-Garcia ("Angel"), Marrero-Nava's father acting on behalf of himself and Marrero-Nava's mother Ligia Maria Nava-de Marrero ("Ligia") (collectively "the petitioners"), all natives and citizens of Venezuela, petition this court for review of the Board of Immigrations Appeals' ("BIA") affirmance of the Immigration Judge's ("IJ") order of removal and denial of withholding of removal and CAT relief. For the reasons that follow, we grant the petition as to Carolina and Angel and deny the petitions as to Julio and Ligia.

I. Background

After the petitioners entered the United States on different dates in 1999, 2000, and 2002, and remained beyond the periods authorized by their visas, the INS issued notices to appear charging them with removability. In 2005, Carolina filed an application for asylum on account of her political activities. Julio proceeded as a derivative on that application. Angel filed a separate application for asylum, with Ligia proceeding as a derivative on his application.[1] In her application, Carolina alleged that she and Julio had been active in the political process, opposing Chavez, and been harassed and threatened as a result. She further indicated that Angel had been persecuted since 1993. In 1998, friends warned Carolina and Julio to stop their opposition actions and join those

_____

[1] The cases were later consolidated.

supporting Chavez. In October, police stopped Julio as he was driving home and detained him because he had political propaganda in his car. No charges were filed, although Julio received a speeding ticket. In December, a customer refused to pay his bill in the bar where Julio and one of his brothers worked. The man stated that he was angry because Julio opposed Chavez, and he warned Julio to leave Chavez territory. A few hours later, as the bar was closing, four armed men arrived looking for Julio. When they searched the bar and did not find Julio, who was hiding in a restroom, the men left. In 1999, Carolina and Julio began to receive threatening phone calls, and although they initially were not concerned and thought someone was playing a joke, they eventually changed their numbers. Angel then started to receive calls. In June 1999, men approached Julio as he was leaving work, threatened him because he opposed Chavez, and spit on him. After the men left, Julio discovered a threatening note on his car. In September, Angel was attacked by a group of men, knocked unconscious, and was treated at a nearby medical clinic. Angel then fled Venezuela. Carolina and Julio remained, and in January 2000, Julio's brother warned them to stop opposing Chavez. One day, as Carolina was coming home from work, a group of women began yelling at her and threatening her because she and Julio opposed Chavez. The women beat Carolina about the head and stomach. She was treated for injuries at the area clinic. Finally, in February 2000, someone shot out the windows of Carolina's home. She and

3

Julio fled after this incident.

In his asylum application, Angel stated that he had been persecuted on account of his political opinion and membership in a social group. He had traveled to and from the U.S. twenty-two times between 1992 and his final entry in 1999. Angel had been active in the Action Democratica ("AD") since his childhood. In 1992 and 1993, he began to receive threats from Chavez's group, the Bolivarian Circles, and in December 1993, he was beaten and threatened. He moved out of Caracas until he was able to come to the United States in 1994. Angel returned to Venezuela in 1997. After Chavez was elected, he began to receive calls and threats. In September 1999, his car was forced off the road by a group of men in a van and on motorcycles. The men wore red berets associated with Chavez supporters. The men pulled Angel from his car, pointed a gun at his head, and beat him unconscious. After this incident, Angel left Venezuela.

At the removal hearing, Carolina testified as follows:[2] She and Julio also were members of the Project Venezuela political organization since 1998.[3] They handed out pamphlets and attended meetings to oppose Chavez. Angel was a

---

[2] The government accepted counsel's proffer that Julio and Angel would corroborate Carolina's testimony.

[3] Carolina was asked when she joined and she stated that it was in 1998. At no point during the hearing was she asked what month. In her asylum application, she indicated that she joined Project Venezuela around May 1998.

member of the AD. She then testified to the incidents of alleged persecution as detailed in her asylum application, including about forty threatening phone calls stating that she and Julio had not been forgotten and would be killed, the attack on Angel in 1999, the beating she suffered, and the shots fired into the window of her home. Carolina did not know who was responsible for the shots, although there was a picture of Chavez's opponent in the window of her home.

On cross-examination, Carolina admitted that she had no leadership position in Project Venezuela, had not reported any of the incidents to the police, and had been in the U.S. in October 1999 but did not seek asylum at that time. The government questioned the alleged attacks and noted that the medical records from the clinic were signed by the same physician for both Angel's treatment and Carolina's treatment. Carolina stated that she did not remember the name of the doctor, but that he had been a general practitioner. The government informed her that the doctor was a surgeon, and Carolina explained that in Venezuela surgeons were general practitioners. Carolina also explained that the clinic had several doctors and she had not seen the man who treated her father. She stated she did not remember the doctor's name because she was traumatized from the beating.

In support of the applications, Carolina and Angel submitted the 2004 State Department Country Reports, which confirmed that Chavez permitted intimidation of his opponents, although the report did not mention Project Venezuela or the AD.

5

They also submitted the medical records from the clinic where Angel was treated for trauma and Carolina was treated for bruises to the head and stomach. The records showed that the two were treated by the same doctor, who was a general surgeon.

To corroborate the allegations of the beatings, Carolina submitted a letter from a neighbor who witnessed the beating, and Angel submitted a statement from his employer, Cenen Alberto Guerra Gomez. According to Gomez, he observed cars stopped on the side of the road and Angel laying on the ground. He took Angel to the clinic. Finally, Carolina and Angel submitted documents intended to confirm their membership in political activities.

The IJ denied relief, finding the asylum application untimely and noting that there were numerous inconsistencies in the record evidence and testimony, leading the IJ to find "the overall testimony incredible." Specifically, the IJ identified the following credibility concerns: Gomez did not identify who was responsible for the attack on Angel, which was inconsistent with Carolina's testimony; Carolina testified that the doctor who treated her and Angel was a general practitioner, but the record reflected the doctor was surgeon; the document purporting to confirm Carolina's membership in Project Venezuela indicated that she "appeared to be registered as an active member . . . since 1998," which led the IJ to believe that the affiant did not accept that Carolina had been a member; and Carolina did not testify

6

to the month in which she joined the party, but the document indicated in was May of 1998. The IJ also denied the application on the merits, finding that the events described did not rise to the level of past persecution, there was no evidence of any nexus between the alleged incidents and political activities, and no evidence the threat was country-wide. The IJ noted that Carolina and Angel had not reported the incidents to the police and had returned to Venezuela after several trips to the United States, which diminished their claims of persecution.

The petitioners appealed to the BIA, challenging the IJ's adverse credibility determination and finding on past persecution. The BIA dismissed the appeal, declining to address the credibility issue because, even if the testimony was credible, the events considered cumulatively did not rise to the level of persecution. This petition for review followed.

II. Discussion

The petitioners first argue that the IJ erred in the adverse credibility finding because there were no actual inconsistencies and any minor inconsistencies were not relevant to the claim for relief. They then argue that they established eligibility for withholding of removal and CAT relief.

Where, as here, the BIA does not expressly adopt the IJ's decision, we review the BIA's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (noting that this court reviews the BIA's decision; but "[i]nsofar as the

7

[BIA] adopts the IJ's reasoning, we will review the IJ's decision as well"). We review the BIA's legal determinations de novo. Id. Factual determinations are reviewed under the "highly deferential" substantial evidence test, and this court must affirm a "decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (internal citation omitted). Therefore, a fact determination will be reversed only when the record compels, instead of merely supports, a reversal. Alim v. Gonzales, 446 F.3d 1239, 1254 (11th Cir. 2006). "Under the substantial evidence test, we review the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). That evidence in the record may support a contrary conclusion is not enough to justify reversal. Id. Credibility determinations, like other factual findings, are reviewed under the substantial evidence test. Forgue, 401 F.3d at 1286. An adverse credibility finding, however, "does not alleviate the IJ's [or BIA's] duty to consider other evidence produced by the asylum applicant." Forgue, 401 F.3d at 1287.

An alien may obtain asylum if he is a refugee. 8 U.S.C. § 1158(b)(1)(A). A refugee is a person who is unable or unwilling to return to his home country because of past persecution or a well-founded fear of future persecution on account

8

of race, religion, nationality, membership in a particular group, or political opinion. INA § 101(a)(42)(A), 8 U.S.C. § 1101(A)(42)(A). A well-founded fear of persecution is one that is subjectively genuine and objectively reasonable. Al Najjar, 257 F.3d at 1289. The applicant carries the burden of proving that he meets the definition of refugee. Id. at 1284.

To obtain withholding of removal, an alien must show that it is more likely than not that he will be persecuted or tortured upon being returned to his country.[4] Sepulveda v. U. S. Att'y. Gen., 401 F.3d 1226, 1232 (11th Cir. 2005). This standard is more stringent than the well-founded fear standard for receiving asylum. Al Najjar, 257 F.3d at 1292-93. Thus, if an applicant is unable to meet the asylum standard, he is generally unable to qualify for withholding of removal. Id. To receive CAT relief, an alien must show that it is more likely than not he would be tortured if removed. 8 C.F.R. § 208.16(c)(2). The applicant must also demonstrate that the feared torture would be by the government or with the government's acquiescence. Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1242 (11th Cir. 2004). As with withholding of removal, the standard for CAT relief is higher than the burden for showing eligibility for asylum. Al Najjar, 257 F.3d at 1302-03.

---

[4] Unlike asylum, which is discretionary, withholding of removal is a mandatory form of relief once the applicant establishes eligibility. 8 C.F.R. § 208.16(d)(1).

1. Scope of Appeal

We begin with two procedural issues: First, whether the petitioners preserved a challenge to the adverse credibility determination. Upon review, we conclude that the credibility issue is properly before us. Cf. 8 C.F.R. § 1003.1(d)(3)(i) (describing BIA's review of the IJ's credibility findings for clear error). Contrary to the government's argument, the BIA's decision not to address credibility is not the equivalent of a failure to exhaust and thus does not divest this court of the authority to consider the issue.

Second, because the petitioners do not challenge the IJ's determination that the asylum application is untimely, they have abandoned that issue. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 (11th Cir. 2005). Thus, only the withholding of removal and CAT claims remain, and these regulations do not provide for derivative benefits. See Delgado v. U.S. Att'y Gen., 487 F.3d 855, 862 (11th Cir. 2007); 8 C.F.R. § 208.16(c). Therefore, we deny the petition as to Julio and Ligia. We now turn to whether Carolina and Angel would be eligible for relief.

2. Credibility[5]

"An IJ's denial of asylum relief . . . can be supported solely by an adverse

_____

[5] In considering a petitioner's claim for withholding of removal, the IJ must determine credibility in the same manner as in asylum cases. See 8 U.S.C. § 1231(b)(3)(C); 8 U.S.C. § 1158(b)(1)(B)(ii)-(iii). Thus, to establish entitlement to relief, the applicant must establish past persecution with "specific and credible evidence." Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1202 (11th Cir. 2005).

credibility determination, especially if the alien fails to produce corroborating evidence." Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1231 (11th Cir. 2006). The IJ must make an explicit credibility finding and offer "specific, cogent reasons for the finding." Chen, 463 F.3d at 1231; see also Yang v. U.S. Att'y. Gen., 418 F.3d 1198, 1201 (11th Cir. 2005). If the IJ makes an explicit credibility finding, the applicant bears the burden to show that the finding is not supported by specific, cogent reasons or by substantial evidence. Id. The petitioner cannot meet this burden simply by arguing that the decision was not supported by substantial evidence because it relied on trivial and irrelevant inconsistencies. Chen, 463 F.3d at 1232-1233. When the IJ identifies an applicant's inconsistencies *that are supported by the record*, this court "will not substitute [its] judgment for that of the IJ with respect to its credibility findings." D'Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 819 (11th Cir. 2004) (emphasis added).

"The asylum applicant must establish eligibility . . . by offering credible, direct, and specific evidence in the record." Forgue, 401 F.3d at 1287 (citation omitted). "Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishments." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1255 (11th Cir. 2006).

Here, the IJ determined the petitioners lacked credibility and provided these

11

specific reasons:[6] Carolina could not remember the name of the physician who treated her and Angel for their injuries; Carolina mistakenly referred to the doctor as a general practitioner when he was a surgeon; Carolina's certificate from Project Venezuela was translated to read she "apparently" was a registered member of the organization; Carolina testified that she joined the party in 1998, but did not specify that it was May of that year; and the witness to the attack on Angel did not see who was responsible for the attack, which was inconsistent with Carolina's testimony.

Upon review, we agree with the petitioners that the IJ's adverse credibility determination is not supported by substantial evidence. The IJ was suspicious because Angel and Carolina were treated by the same doctor, yet Carolina could not remember his name. The record reflects that the doctor was a provider at the area clinic. There would have been no reason for her to know his name, and it is

_____

[6] The REAL ID Act of 2005 amended 8 U.S.C. § 1158 and changed the law regarding credibility determinations. See Pub. L. No. 109-13, § 101(a)(3), 119 Stat. 231, 303 (2005). The amendment permits adverse credibility determinations based on the "totality of the circumstances" and allows the denial of an asylum claim based on inconsistencies, inaccuracies and falsehoods contained in the evidence without regard to whether they go to the heart of the claim. 8 U.S.C. § 1158(b)(1)(B)(iii); Chen, 463 F.3d at 1231. The amendment took effect on May 11, 2005, the date of enactment, and applies to applications of asylum and withholding of removal filed after that date. Carolina filed her asylum application on April 22, 2005, before the effective date of the REAL ID Act; thus, the new rules do not apply to her application. See id. However, Angel submitted his asylum application in June 2005, after the effective date of the REAL ID Act. Thus, it would appear that the new rules would apply to his application. We need not determine which test to apply to the two applications in this case because the alleged inconsistencies went to the heart of the persecution claims.

understandable that she would forget the name of someone she met while being treated following a beating. Moreover, the fact that she believed he was a general practitioner and not a surgeon is not relevant. And as Carolina explained, surgeons in Venezuela were general practitioners.

In addition, Carolina's testimony that she joined the party in 1998 is consistent with the other evidence in the record that she was a member since May 1998. The fact that the certificate translated to "apparently" was a member does not establish an inconsistency in the evidence. At the removal hearing, when asked when she joined the party, Carolina stated only that it was in 1998. There was no attempt at the hearing to determine what month she joined the party.

Finally, the record does not support the IJ's finding that the witness's statement was inconsistent with the testimony about the attack on Angel. Guerra explained what he meant by "witnessed" the attack, and this testimony is consistent with Angel's version of the incident in his asylum application as well as Carolina's testimony at the hearing.

Thus, the IJ's reasons for the adverse credibility finding are not supported by the record. See Forgue, 401 F.3d at 1287. Accordingly, we vacate the adverse credibility finding. D-Muhumed, 388 F.3d at 819. We further conclude that remand is unnecessary because the credibility issue is a legal determination at this stage; the court need not make factual findings about the evidence, but merely

13

apply the case law to the credibility determination. As such, we may proceed with the merits.

3. Merits

An applicant for withholding of removal may satisfy his burden of proof in one of two ways. 8 C.F.R. § 208.16(b). The alien can meet his burden by showing either: (1) "past persecution in his country based on a protected ground," in which case a rebuttable presumption is created that his life or freedom would be threatened if he returned to his country; or (2) "a future threat to his life or freedom on a protected ground in his country."[7] Al Najjar, 257 F.3d at 1287.

Under either method of satisfying the burden of proof for withholding of removal, the applicant must establish a nexus between the past or future persecution and one of the five protected grounds, in this case political opinion. See 8 C.F.R. § 208.16(b). The application must show that the persecution was motivated, at least in part, by a protected ground. Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1375 (11th Cir. 2006) (noting that the protected ground need not be the sole basis for the persecution). Criminal activity and acts of private violence and

---

[7] If the petitioners experienced past persecution, there is a rebuttable presumption of future persecution, and the burden shifts to the government to show both that (1) relocation is possible within Venezuela, and (2) it is reasonable to expect the petitioners to relocate. See Arboleda v. U.S. Att'y Gen., 434 F.3d 1220, 1223-1224 (11th Cir. 2006). Neither the IJ or the BIA addressed the issue of relocation, but it is noteworthy that the Country Report states that there have been at least a dozen politically motivated killings since Chavez's election.

personal retribution do not constitute evidence of persecution on account of a statutorily protected ground.  Sanchez, 392 F.3d at 438.

"[P]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation."  Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir.2005) (quotations omitted).  In determining whether an alien has suffered past persecution, the IJ must consider the cumulative effects of the incidents.  Ruiz v. U.S. Att'y Gen., 479 F.3d 762, 766 (11th Cir. 2007).  This court, however, has rejected a rigid requirement of physical injury, making clear that "attempted murder is persecution," regardless of whether the petitioner was injured and even if the attack is unsuccessful.  Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1231-33 (11th Cir. 2007); see also Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1257-58, 1257 n.7 (11th Cir. 2007) (extending the rule in Sanchez Jimenez to other projectiles such as rocks); Ruiz v. Gonzales, 479 F.3d 762, 766 (11th Cir. 2007) (holding that the cumulative effect of a beating, threatening phone calls, and a kidnaping constituted persecution).  But see Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1174 (11th Cir. 2008) (holding that a "minor beating" does not constitute persecution).[8]

Here, considering the events cumulatively, the credible testimony and other

---

[8] Djonda does not control the outcome of this case because the IJ in Djonda made a factual finding that the beating was minor.  There is no such finding in the instant case; thus, we are not bound by a conclusion that the beatings suffered by Angel and Carolina were minor.

15

evidence in the record establishes that Carolina and Angel suffered past persecution. Carolina and Angel received numerous threatening phone calls and they were beaten. During each of these incidents, the persecutors stated that they had targeted Carolina and Angel for opposing Chavez's regime. The Country Reports and other documents establishes that Chavez's supporters often used intimidation tactics against the opposition, although the reports do not mention Project Venezuela or the AD specifically.

Because Carolina and Angel established past persecution, they are entitled to a rebuttable presumption of future persecution. The government has proffered no evidence and raised no argument that relocation was a reasonable option. And neither the IJ nor BIA made any findings on that issue. Where the BIA fails to consider an issue, the proper course of action is to remand except in rare circumstances. INS v. Orlando Ventura, 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002); Calle v. U.S. Att'y Gen., 504 F.3d 1324, 1330 (11th Cir. 2007) (describing rare circumstances as one raising legal and not factual issues); see also Gonzales v. Thomas, 547 U.S. 183, 126 S.Ct. 1613, 1615, 164 L.Ed.2d 358 (2006). Accordingly, we VACATE and REMAND the denial of relief with instructions to address the relocation question.